ELECTRONIC DATA SYSTEMS CORPO-
RATION, Plaintiff-Appellant,

v.

Frederick A. KINDER, Jr., Defendant-
Appellee.

No. 73-3511.

United States Court of Appeals,
Fifth Circuit.

July 18, 1974.

Rehearing Denied Aug. 27, 1974.

J. Edwin Fleming, E. Eldridge Goins,
Jr., Dallas, Tex., for plaintiff-appellant.

William M. Rippey, Royal H. Brin,
Jr., Dallas, Tex., for defendant-appellee.

Before BELL, SIMPSON and IN-
GRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Electronic Data Systems Corporation (EDS) brought this suit, seeking to compel a former employee, Frederick A. Kinder, Jr., to comply with an agreement not to engage in competition with EDS after termination of his employment. Kinder counterclaimed for a bonus of $2500 never paid him and for additional wages. The district court issued an injunction, but only to the extent of enjoining Kinder from soliciting the employees of EDS to work for his present employer, Systems Research, Inc. (SRI). While it denied Kinder's request for relief as to the claimed additional wages, the court concluded that Kinder was entitled to the $2500 bonus. Electronic Data Systems Corp. v. Kinder, 360 F.Supp. 1044 (N.D.Tex., 1973). We affirm.

Since 1962 EDS has performed data processing services, consisting primarily of formulating computer programming systems and feeding information to a computer by way of these systems in order to solve the specific problems of its clients. EDS is plainly a successful data processing firm, for it maintains offices in twenty-two American cities and has clients located throughout our nation. The company attributes its success, at least in part, to the formulation and development of computer programs that are superior to those used by competing data processing firms. These programs, EDS claims, are more efficient than its competitors' programs, resulting in faster services, a reduced backlog of problems to be solved, and lower cost to the client. In order to perpetuate its success, EDS has made substantial efforts to prevent information regarding its superior programming methods from becoming known and used by its competitors. EDS utilizes various means of protecting this information,[1] one of which is the inclusion in employment agreements of covenants not to engage in competition. Specifically, the pertinent covenants provide that for three years after termination of employment a former employee of EDS will not engage in the following conduct:

"(i) recruit, hire, assist others in recruiting or hiring, discuss employment with, or refer to others concerning employment, any person who is, or within the then preceding twelve months was, an employee of EDS or any subsidiary or affiliated company, or of any present, prospective or former customer of EDS or any subsidiary or affiliated company, (ii) compete with EDS or any subsidiary or affiliated company within two hundred (200) miles of any city in the United States in which EDS or any subsidiary or affiliated company does business, or (iii) use in competition with EDS or subsidiary or affiliated company customer, prospective customer, or former customer, any of the methods, information or systems developed by EDS or any subsidiary or affiliated company or its customers, prospective customers, or former customers within two hundred (200) miles of any city where such customer, prospective customer, or former customer does business."

After receiving about four years training and experience in data processing while he was in the Marines, defendant Kinder went to work for EDS and signed an employment agreement containing the covenants set out above. While he was employed with EDS, he became familiar with the processing of health care claims and was instrumental, it seems, in the development of a new system for processing such claims. This system, EDS contends, greatly facilitates the processing of health care claims and is a confidential competitive advantage that it maintains over its business rivals.

---

1. Methods implemented by EDS to protect this confidential information include retaining ownership of the processing systems rather than selling them to its customers, maintaining the documentation of its systems in confidence, and contractually binding its customers for a minimum of five years from disclosing information about the systems.

In the course of his employment with SRI, Kinder has been involved in those affairs of the business concerning health care claims. Located in Kansas City, Missouri, he acted as an intermediary between the Kansas City Blue Shield, a customer of SRI, and the SRI data processing offices in Dallas, Texas. His work consisted of solving the daily problems encountered in processing health care claims and making recommendations for solving processing problems to the Dallas office. Additionally, he participated in discussions with prospective customers, explaining the virtues of SRI's data processing services in an attempt to attract business. It is this involvement in SRI's health care processing business, EDS argues, that constitutes competition with EDS in violation of the covenants not to compete, and thus Kinder should be enjoined from so acting.

Judicial enforcement of covenants proscribing competition with a former employer depends largely on a balancing of interest between the employee and the employer. While the courts will not enforce a covenant that compels a former employee to submit to a state of peonage, covenants not to compete are generally enforced when they impose reasonable geographic and durational limitations on the employee. Justin Belt Co. v. Yost, Tex., 502 S.W.2d 681 (1973); see Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W. 2d 950 (1960). Balancing the interests of each party to the agreement, a restrictive covenant will be enforced only to the extent necessary to protect the former employer's business. Restatement of Contracts, § 515(a).

We believe that the limited injunctive relief granted by the district court is fully adequate for the protection of plaintiff's business. There is no evidence that Kinder ever disclosed to anyone, or used in competition against his former employer, any confidential information obtained in the course of his employment with EDS. Indeed, SRI does not use EDS's highly prized, confidential system for processing its health care claims, but uses instead a system called the "Model System" for processing these claims that is formulated and made available by the government to any person or firm engaged in this type of data processing. Since EDS attributes so much of its business success to the confidential nature of its superior processing systems, its business is adequately protected because none of this information has ever been disclosed by Kinder. Expanding the injunctive relief now is unnecessary for the protection of plaintiff's business.

Even though the restrictive covenants proscribed mere competition apart from the disclosure or use of any confidential information obtained as a result of Kinder's employment, the injunctive relief granted below is adequate. The meaning of the term "competition" in the context of these restrictive covenants must be determined in light of the fundamental policy underlying the imposition of such restrictions. While Kinder was involved generally in the processing of health care claims and had some dealings with prospective customers, this conduct alone is not a threat to plaintiff's business. Without disclosing or using plaintiff's confidential system for processing health claims, Kinder's employment with SRI consisted simply of his acting in a general capacity as a data processor. To restrict him from such employment is not only unnecessary for the protection of the business of EDS, but also is an unwarranted limitation on Kinder's freedom to work as a data processor.

While agreeing with the district court's ultimate conclusions in this case, we point out that recent pronouncements of the Supreme Court of Texas make clear that the covenants in question here are not void and unenforceable for want of a reasonable geographic limitation. The Texas Supreme Court in Justin Belt Co. v. Yost, supra, reiterated the view that covenants not to compete, even though unreasonable in terms of geographic and durational limitations as

originally written, may be judicially reformed so as to impose reasonable limitations and thereby rendered enforceable. *See* Lewis v. Krueger, Hutchinson & Overton Clinic, 1537 Tex. 363, 269 S. W.2d 798 (Tex., 1954); Spinks v. Reibold, 310 S.W.2d 668 (Tex.Civ.App., El Paso, 1958), writ ref'd. Since we have concluded that the limited injunctive relief granted below sufficiently protects the plaintiff's business, it is unnecessary to determine at this time what is a reasonable geographic limitation. We simply point this out to be sure the parties understand that, should a violation of the covenants occur in the future, a proceeding may be instituted to compel compliance.[2]

The judgment of the district court is affirmed.

---

2. We have considered appellant's other contentions and have concluded that they are meritless and not worthy of discussion.